191 N.J. Super. 388 (1983)
466 A.2d 1324
STATE OF NEW JERSEY
v.
WILLIAM G. RYPKEMA.
Superior Court of New Jersey, Law Division Bergen County.
August 31, 1983.
*390 Leopold A. Monaco, for defendant-appellant (Monaco & Oratio, P.C., Westwood, attorneys).
Susan Sciacca, for the State of N.J. (Larry J. McClure, Bergen County Prosecutor, attorney).

OPINION
FREDERICK W. KUECHENMEISTER, J.S.C., temporarily assigned.
This is an appeal de novo from the defendant's conviction in the Municipal Court of Woodcliff Lake on January 24, 1983. Defendant was found guilty of driving while under the influence of alcohol, contrary to N.J.S.A. 39:4-50. Besides the prescribed de novo review of the sufficiency of the evidence below, the two issues on appeal concern the admissibility of blood test results and the requirement that operation of a motor vehicle be contemporaneous with intoxication.
On May 27, 1982 at approximately 2:57 a.m., Linda Sacchieri was upstairs reading at her home on Woodcliff Avenue in Woodcliff Lake. Upon hearing a crash from the street below, Ms. Sacchieri looked out her window and saw an El Camino which had become disabled after apparently striking a telephone pole.
The resident, a four-year member of the local ambulance corps, responded to the scene to offer assistance. She observed defendant sitting behind the steering wheel, and detected a strong odor of alcohol coming from him. When she stated that help was on the way, defendant immediately exited the vehicle and, after falling once, ran down the street. Ms. Sacchieri noted that defendant staggered as he ran, although it was later learned that he had incurred an injury to his knee as a result of the accident.
Defendant was apprehended some one and one-half hours later after police had chased him through a wooded area in town. The arresting officer testified that defendant "reeked of *391 alcohol," and had trouble standing and speaking. In addition, the officer observed lacerations on defendant's knee and arm. Therefore, defendant was transported to Bergen Pines County Hospital in Paramus.
At the hospital, Patrolman Bruce Conway requested that a blood sample be withdrawn from defendant's person. After submitting the necessary form to the nurse, the officer observed a physician take the blood sample with a clear, grey capped vial which the officer claimed "he could see through." The time in which the blood was withdrawn was approximately 5:09 a.m., some two hours after the accident.
A forensic chemist from the New Jersey State Police Laboratory was called to testify as to the percent alcohol content of defendant's blood. Two readings were taken of the sample by way of head space gas chromatography. The readings were .153 and .156 percent blood alcohol.

THE BLOOD TEST
Defendant's first argument on appeal concerns the admissibility of the blood test result. The argument is founded not on the need for proof of the manner in which the test was performed, which was sufficiently formulated in State v. Martorelli, 136 N.J. Super. 449 (App.Div. 1975), but rather the method by which the actual blood sample was withdrawn. The issue, although a frequent one at the municipal court level, is novel in terms of the available case law.
Defendant asserts that the person who withdrew defendant's blood should have been called to testify, as it is the only manner in which the State may prove that the sample was taken in a medically acceptable manner and environment. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Burns, 159 N.J. Super. 539 (App.Div. 1978). Such an assertion extends the prescriptions espoused in Schmerber *392 well beyond that which was intended, and is clearly without merit.
Much like the procedure for testing the alcohol content of blood, the process of withdrawing same is of comparable simplicity, especially when done by a medical physician within the confines of a hospital. See Martorelli, supra, 136 N.J. Super. at 454; see also State v. Gardner, 51 N.J. 444 (1968); State v. McMaster, 118 N.J. Super. 476 (App.Div. 1972). The Schmerber case, although setting forth the general foundation with respect to the admissibility of blood test results, did not impose upon the State the burden of excluding every conceivable event which might affect such sample's admissibility, absent some affirmative indication to the contrary. That is, without some scintilla of evidence that could place the chemical integrity of the blood sample in doubt,[1] proof that such sample was obtained in a hospital and by qualified medical personnel will suffice to establish the requirement that the blood was withdrawn in a medically acceptable manner and environment.[2]
In the present case, Patrolman Conway testified that, upon his request, he observed a medical doctor withdraw the blood while in the hospital emergency room. That the blood was withdrawn specifically for the purpose of analyzing its blood alcohol content and by a medical doctor in the course of his duties at a hospital is clear proof that the sample was taken in a *393 medically acceptable manner and environment. There was no evidence in the record to refute such proof.

OPERATION
Defendant's final argument alleges that, although defendant clearly operated his vehicle on the night in question, there was no proof that he did so while under the influence of alcohol. As stated in N.J.S.A. 39:4-50, for a defendant to be amenable to penalty, he must operate a motor vehicle while under the influence. The intent behind such language is clear: the act of operating a vehicle must be contemporaneous with being under the influence. State v. Prociuk, 145 N.J. Super. 570 (Co.Ct. 1976); See State v. Creighton, 201 N.W.2d 471 (Iowa Sup.Ct. 1972); State v. Clark, 130 Vt. 500, 296 A.2d 475 (1972).
In the present case, defendant's blood was withdrawn some two hours after the accident. Taking note that blood alcohol content may rise over the course of 30 minutes to an hour as the alcohol is absorbed into the body, defendant seeks to raise the inference that his blood level may have been well below the presumptive level at the time of the accident. In light of the facts in the present case, such an argument must fail, since it pertains only to the applicability or inapplicability of the statutory presumption, and not the overall determination as to the defendant's ability to operate a motor vehicle.
Regardless of the existence or non-existence of the presumption, a court must be concerned with whether the defendant suffered from such a diminution of his mental or physical capabilities so as to render him unfit to operate a motor vehicle. State v. Tamburro, 68 N.J. 414, 421 (1975); State v. Johnson, 42 N.J. 146 (1964). Here, the defendant "reeked" of alcohol, staggered and swayed for balance, and admitted to being the operator of a vehicle involved in an unexplained, single car accident. There is no question that, at the time of the accident, the defendant was under the influence of alcohol. His conviction is, therefore, affirmed.
NOTES
[1] See People v. Douglas, 16 Misc.2d 181, 183 N.Y.S.2d 945 (Co.Ct. 1959) and People v. Ward, 14 Misc.2d 518, 178 N.Y.S.2d 708 (Co.Ct. 1958), where there was proof that alcohol had been used to prepare the defendant's arm for injection. In both cases, the Court properly suppressed the blood test result.
[2] Many jurisdictions have expanded upon this rule so as to create a presumption of medical acceptability once the blood is withdrawn by a physician. This Court is not so inclined to extend Schmerber to such a degree, at least without statutory authority. For an example of this statutory presumption, see South Dakota statute SDCL 32-23-14. But see State v. Guthrie, 85 S.D. 228, 180 N.W.2d 143 (1970).