229 N.J. Super. 49 (1988)
550 A.2d 1232
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PHILIP DOHME, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 16, 1988.
Decided March 11, 1988.
Argued after Remand November 7, 1988.
Decided November 28, 1988.
*51 Before Judges DREIER and HAVEY.
Robert A. Weir, Jr., argued the cause for appellant (Vernon & Aaron, attorneys; Robert A. Weir, on the brief).
Stephen H. Monson, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Stephen H. Monson, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a determination of the Eatontown Municipal Court by leave granted in our prior reported opinion in this case. See 223 N.J. Super. 485 (App.Div. 1988). Defendant had been convicted of driving while intoxicated, a violation of N.J.S.A. 39:4-50. He challenged the breathalyzer evidence *52 by questioning the composition of the chemical ampoules used in the test. On remand, the trial judge admitted into evidence the certificate of random testing of the ampoules issued by Galbraith Laboratories of Knoxville, Tennessee to Guth Laboratories, Harrisburg, Pennsylvania, the company which supplied breathalyzer test ampoules to the State of New Jersey. The judge, however, struck certain opinion language in this assay certificate, a point we will discuss infra. As we stated in our earlier opinion, this certificate supplied the missing link in the proof necessary to support the admission of the breathalyzer results against defendant.
Defendant asserts that the assay certificate was inadmissible against defendant. The State argues that we need not reach this issue, contending that the State Police Coordinator's certificates, offered in evidence at the initial trial, were all that were required to support the proposition that the batch from which the ampoules were selected had been randomly tested. In effect, the State is rearguing a point decided to the contrary in footnote 2 of our initial decision. 223 N.J. Super. at 487, fn. 2. The earlier certificates stated in part that the examiner attested that the document contained a
true, accurate and complete record of the inspection and maintenance performed herein, including random sample testing of ampoules used in the operation of this approved instrument as is evidenced by the ampoules control number(s) designated on this certificate. ... [Emphasis supplied].
The only reference to the batch of ampoules on these originally-admitted certificates is to an ampoule control number. There is no reference to the random testing of the batch of ampoules bearing that number. Although the cryptic sentence quoted above can be read in different ways, the most that can be said for it is that the trooper inspecting the machine is stating that the ampoules have been randomly tested because they have been given an ampoule control number. There is no statement that the control number also was found in a certificate from an approved testing laboratory and that that certificate was examined by the trooper who relied upon the same in keeping with *53 the practice of other experts in the field. See Evid.R. 56(2).[1] Neither is there a similar statement from the officer who administered the test. Either would have been sufficient.
The State next contends that the procedure used in testing the machine, the "random sample testing" described in the Trooper's certificate, is itself a spot-checking of the ampoules. The procedure is established in N.J.A.C. 13:51-3.6(a)2. The State notes the use of two ampoules, a reference ampoule and a test ampoule. The problem is that this test is a test of the machine, not the batch of ampoules. The particular ampoule used would of necessity have to meet specifications or else the fixed percentage alcohol solution would not have produced a valid result. Yet there is no statement that the particular ampoule has come from a batch of uniform and conforming specific gravity and silver nitrate, potassium dichromate and sulfate concentration, other than by a reference to an ampoule control number. The test ampoules drawn by the Trooper could have been taken from a batch in which a significant percentage failed to conform to proper standards, yet if a conforming ampoule was drawn, the test result still would have been valid. The testing of the 25 test ampoules from a homogeneous batch by the independent testing laboratories supplies this missing element, since there is no doubt that we accept the random testing procedure. State v. Dickens, 130 N.J. Super. 73, 79 (App.Div. 1974). Without the certificate there would be no proof that the population from which the Trooper drew the two-ampoule test was itself uniform.[2] We would have had no *54 problem if the standard State Police certification included a reference to the inspection of the certificate and a reliance upon its contents. This is precisely the type of "easy call" scientific test that may be included in a certificate, in that the analysis is based more on observations of test results than opinion. See State v. Matulewicz, 101 N.J. 27, 30-32 (1985).
We also agree with the State that the concluding statement in the testing certificate, stricken by the trial judge, that the batch "complies within established tolerances for Breathalyzer solution as specified by the manufacturer, ...." was admissible. While this statement might be viewed as an opinion, the opinion is of such a simple nature that it can fall within even a layman's ability, i.e., that the breathalyzer manufacturer's printed tolerances have been reviewed and that the test results noted in the certificate fall within these limits. Evid.R. 56(1). One need not be an expert to state that a number falls between two others.
The final question in this case is the admissibility of the batch assay certificate in the case against defendant. Since we lack proof of reliance upon this certificate by either the State Trooper who tested the machine or the operator of the machine (in which case the contents of the certificate might have been admitted under Evid.R. 56(2) as part of the expert's opinion), the certificate itself would have to be admitted as evidence to support the missing link of random testing. There are both hearsay and authentication problems. Evid.R. 63 and 67.
The State suggests that the admissibility is established by Evid.R. 63(13), the business records exception to the hearsay rule. The problem with this certificate being admitted as a *55 business record, however, is that although the analysis is based upon "objective data requiring an average level of difficulty of interpretation," Matulewicz, 101 N.J. at 30, no proofs were heard as to the "method and circumstances" involved in the reports preparation. Ibid. See also State v. Martorelli, 136 N.J. Super. 449 (App.Div. 1975), certif. den. 69 N.J. 445 (1976).
Had the issue of the contents of the ampoules been the principal fact to be proven, the State's failure to comply with the prerequisites for admission of evidence under the business records exception to the hearsay rule, Evid.R. 63(13), and its failure to produce either a representative of the testing laboratory, the manufacturer, the Trooper or the administering officer to state that they prepared or relied upon the underlying testing as revealed by this certificate, could have been fatal to the State's claim.[3] But, as this issue was not the direct issue in the case, we do not have to reach this question. As noted by the trial judge, it was secondary or even tertiary to the finding of intoxication. The issue in the case is whether the breathalyzer was qualified, and this evidence was offered in an Evid.R. 8(1) hearing. When a judge is making a determination under Evid.R. 8(1), "the Rules of Evidence shall not apply except for Rule 4 or a valid claim of privilege." See State v. Cardone, 146 N.J. Super. 23, 27-29 (App.Div. 1976), certif. den. 75 N.J. 3 (1977), (relating to the admission of test certificates in proceedings to qualify a radar device). The strict prerequisites of *56 Evid.R. 63(13) and the authentication requirements of Evid.R. 67 therefore need not be satisfied if the judge determined that there were sufficient indicia of reliability inherent in this certificate. Since he found that there were, and admitted the certificate, we will not interfere with this exercise of his discretion.
The proofs as supplemented by this certificate warrant conviction.[4]
AFFIRMED.
NOTES
[1] Contrast State v. Ettore, 228 N.J. Super. 25, 32 (App.Div. 1988), where we noted that there was testimony "that the ampules were randomly tested by an independent lab and that [the State Police Coordinator] as well, had performed tests with a solution." [Emphasis supplied].
[2] In State v. DeVito, 125 N.J. Super. 478, 479-480 (App.Div. 1973), we stated that use of an ampoule which "was a random unit supplied by the same laboratory" was a "spot check" sufficient to support the finding of accuracy of the ampoule actually used. This statement may have been too broad. While there may be an assumption that can be drawn from the cases cited in DeVito that ampoules stamped with the same batch number have been filled from a source with a constant composition, a defendant should have the right, upon challenge, to have the basis for that assumption placed in evidence.
[3] We might have been able, however, to fit the proof within the business records exception and supply the foundation proof by inferences to be drawn through common experience and generally accepted notions of the reliability of substances such as this, shipped in interstate commerce for use by law enforcement agencies. See State v. Rines, 269 A.2d 9, 15 (Maine Sup.Ct. 1970) for an analysis of the federal regulations, and application of a resultant presumption "that every man in his private and official character, does his duty until the contrary is proved." Ibid; cf. State v. Matulewicz, 101 N.J. at 31. We have taken note, however, of recent attacks in New Jersey and Pennsylvania on the composition of the ampoules of a different manufacturer, as reported in The Record, Nov. 1, 1988, at A1, col. 1, and Nov. 2, 1988, at B1, col. 1.
[4] For guidance in future cases, we suggest that the test certificate corresponding to the ampoule batch from which the test ampoule was drawn be introduced. At the least, the expert witness should be able to state that he or she has examined the test certificate for the batch and that the ampoule number for the batch is the same as that on the ampoule used when the machine was examined by the State Police Coordinator; and on that basis he can conclude that the ampoule was part of a conforming randomly tested batch. A statement to this effect could be added to the printed certification on the sheet verifying the test of the breathalyzer itself. Further proof should be required of the State only if there is any substantial evidence rebutting the test results set forth in the ampoule test certificate.