764 A.2d 489 (2001)
STATE of New Jersey, Plaintiff-Respondent,
v.
John K. OLIVERI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 2000.
Decided January 16, 2001.
*490 Peter M. O'Mara, Red Bank, attorney for appellant.
John Kaye, Monmouth County Prosecutor, attorney for respondent (Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
Before Judges KESTIN, CIANCIA and ALLEY.
The opinion of the court was delivered by CIANCIA, J.A.D.
Defendant John K. Oliveri was found guilty of driving while under the influence of alcohol, N.J.S.A. 39:4-50, after a trial de novo on the record in the Law Division. He contends now, as he did in the Law Division, that there was insufficient legal basis for the initial stop of his vehicle and that a laboratory report on a blood test was erroneously allowed into evidence at *491 trial because the State failed to lay a proper foundation. We find insufficient merit in the issues raised to warrant a reversal. In addition, we are satisfied that there is sufficient credible evidence in the record to support defendant's conviction even without consideration of the laboratory report.
On the evening in question, defendant was driving a replica model of a 1966 Cobra AC, a car as defendant said, that was "built for racing." The vehicle was stopped at a light when first observed by a local police officer on motor patrol. When the light turned green the officer observed "heavy acceleration" and smoke emanating from the tires. The Cobra's engine was loud. The tires were spinning and the vehicle appeared out of control. The back end "kicked out a little bit." The officer pulled defendant over and, among other things, issued a careless driving summons. N.J.S.A.39:4-7.[1]
On those facts we are satisfied, as was the trial court, that the police officer had a reasonable and articulable suspicion that defendant had committed a motor vehicle violation. The initial investigatory stop was reasonable. State v. Murphy, 238 N.J.Super. 546, 570 A.2d 451 (App.Div. 1990); State v. Carter, 235 N.J.Super. 232, 561 A.2d 1196 (App.Div.1989).
Defendant's second contention is more complex. It concerns the admission into evidence of a certified laboratory report from a State Police laboratory indicating a blood-alcohol concentration of .145%. No foundational testimony was presented by the State prior to the report's admission other than information concerning how the blood was initially drawn and the chain of custody that brought it to the State Police laboratory. Defendant contends the absence of such a foundation precluded admission of the report as a business record. N.J.R.E. 803(c)(6).
Initially, we note that there was some discussion of the procedures set forth in N.J.S.A. 2C:35-19 and some confusion as to the applicability of that statute. The confusion was compounded by the form used by the State Police laboratory (SP-630T), which is designed for both alcohol and drugs and which carries a certification referencing N.J.S.A. 2C:35-19. It is clear from the wording of the statute that its provisions concerning admissibility into evidence of laboratory certificates are intended to apply only to a "proceeding for a violation of the provisions of chapters 35 and 36 of this title or any other statute concerning controlled dangerous substances or controlled dangerous substance analogs...." The statute does not speak to blood-alcohol analysis reports prepared for Title 39 violations.[2]
Defendant contends that the laboratory report cannot qualify as a business record and cites us to State v. Flynn, 202 N.J.Super. 215, 494 A.2d 350 (App.Div.1985). Defendant fails to note that the Supreme Court remanded Flynn to the Law Division "for reconsideration in light of State v. Matulewicz, 101 N.J. 27, 499 A.2d 1363 (1985)." State v. Flynn, 103 N.J. 446, 511 A.2d 634 (1985). On that remand, Flynn was considered along with another case. The two are reported as State v. Weller, 225 N.J.Super. 274, 542 A.2d 55 (Law Div. 1988). In Weller, the court held that State Police blood-alcohol laboratory reports qualify as both business records under then Evid. R. 63(13), now N.J.R.E. 803(c)(6), and public documents under then Evid. R. 63(15), now N.J.R.E. 803(c)(8). The court said that the report could be *492 admitted "without accompanying testimony from the qualified forensic chemist who performed the tests." 225 N.J.Super. at 282, 542 A.2d 55. The State interprets Weller as the precedent that now permits all trial courts to admit laboratory reports without any accompanying foundational evidence. We find no appellate court opinion that has, as yet, endorsed Weller in that broad a fashion.
In our view, the road map for these kinds of evidential issues was set forth in State v. Matulewicz, supra. There the Court noted the following factors to be explored when considering admissibility of a forensic report:
[P]roofs should be adduced to reflect the relative degrees of objectivity and subjectivity involved in the procedure; the regularity with which these analyses are done; the routine quality of each analysis; the presence of any motive to single out a specific analysis for the purpose of rendering an untrustworthy report, and the responsibility of each State Police chemist to make accurate and reliable analyses.

[101 N.J. at 30, 499 A.2d 1363.]
Admissibility must be informed by an evidential record that addresses all relevant factors. Id. at 31, 499 A.2d 1363. Whether the report is sought to be admitted as a business record or a public record "the concern for reliability remains paramount." Ibid. Any concerns about violations of the confrontation clause, such as those expressed by defendant in the present case, are met by a showing that the hearsay is reliable. State In Interest of J.H., 244 N.J.Super. 207, 213, 581 A.2d 1347 (App.Div.1990).
The Matulewicz principles were subsequently codified in N.J.R.E. 808, which provides:
Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.
In the present case there is no viable challenge to the methodology used to draw defendant's blood or to the chain of custody that brought the blood to the State Police laboratory. The test performed in the laboratory, according to the certificate, was a "Headspace Gas Chromatography" which is apparently the same test described in detail in State v. Weller, supra, 225 N.J.Super. at 277-279, 542 A.2d 55. In the present matter, defendant's attorney was supplied the gas chromatograph charts as part of pretrial discovery. The Weller court indicated that these charts would readily reveal any deviation outside the specified standard of error. Weller, supra, 225 N.J.Super. at 278-279, 542 A.2d 55. Here defense counsel did not attempt to show any such deviations on the charts.
We note that the laboratory certificate contains a notarized certification from the forensic scientist who performed the test, which states, in part, that he has been employed in the state forensic laboratory for twenty-two years and has been qualified as an expert witness on 135 occasions in New Jersey courts. He goes on to certify that the laboratory report fairly and accurately documents the type and results of the analysis performed and it was he who performed the analysis, reviewed the results and made the conclusions set forth in the report. In addition to vouching for the accuracy and reliability of the tests, he also states that the test was performed on a routine basis within the laboratory.
N.J.R.E. 808 permits the admission of a business record or public record, such as the laboratory report here in issue, without accompanying testimony when the report concerns an uncomplicated subject *493 matter and the likelihood of accuracy is high. Traditionally, blood-alcohol analysis has been viewed as a simple and accurate procedure warranting admission of a report without additional testimony from the person who performed the test. State v. Martorelli, 136 N.J.Super. 449, 346 A.2d 618 (App.Div.1975), certif. denied, 69 N.J. 445, 354 A.2d 642 (1976); Weller, supra; State v. Rypkema, 191 N.J.Super. 388, 391, 466 A.2d 1324 (Law Div.1983); compare State v. Hudes, 128 N.J.Super. 589, 601-602, 321 A.2d 275 (Cty.Ct.1974) (breathalyzer certificates of operability admissible under Evid. R. 63(13) without testimony of the trooper-coordinator). As stated in State v. Dohme, 229 N.J.Super. 49, 54, 550 A.2d 1232 (App.Div.1988), in a somewhat analogous context, "this is precisely the type of `easy call' scientific test that may be included in a certificate, in that the analysis is based more on observations of test results than opinion. See State v. Matulewicz, 101 N.J. 27, 30-32, 499 A.2d 1363 (1985)."[3] The same may be said in the present instance. Weller, supra, 225 N.J.Super. at 279-281, 542 A.2d 55. We are satisfied that the laboratory report showing the result of a blood-alcohol analysis was properly admitted.
We also note that an alternative basis for the conviction was found by the Law Division judge, which in our view, was sufficiently supported by the credible evidence. Although the municipal court judge was not so persuaded, the Law Division judge found that even absent the laboratory report the testimony of the arresting officer demonstrated defendant's guilt beyond a reasonable doubt. In so doing, the Law Division judge made no credibility findings at odds with those of the municipal court judge. Implicit in both adjudications was a finding that the arresting officer's testimony was credible. Indeed, that testimony was not seriously challenged as to credibility. In this appeal from a de novo trial on the record, we, of course, consider only the action of the Law Division and not that of the municipal court. State v. Joas, 34 N.J. 179, 184, 168 A.2d 27 (1961).
The officer testified that when defendant was first stopped, the officer observed that defendant's eyes were watery and his speech slow and slurred. The officer had to make "a few" requests for defendant to exit the vehicle before defendant did so. Defendant admitted drinking two beers earlier in the day and asked the officer to give him a break. Defendant staggered a little as he walked. The officer asked defendant to walk heel-to-toe for nine steps up and nine steps back. Defendant took fifteen steps up and nineteen steps back without touching heel-to-toe. When attempting a one-legged stand, defendant had difficulty with his balance. He miscounted when attempting to count by thousands from one thousand to thirty thousand. Similarly, when attempting to recite the alphabet from D to S, defendant went to V and "missed several letters in between." A video tape of defendant made at police headquarters was found to be "inconclusive" by the municipal court judge and apparently was not relied upon by the Law Division judge.
Although the Law Division judge believed the laboratory report had been properly admitted into evidence, as an alternative basis for conviction she found that the facts we have set forth constituted sufficient evidence to establish guilt beyond a reasonable doubt under N.J.S.A. 39:4-50.
Appellate review of a Law Division adjudication of guilt in this context is very narrow. We do not re-weigh the evidence, but rather, determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record. State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999); State v. Johnson, *494 42 N.J. 146, 161-162, 199 A.2d 809 (1964). We are satisfied the evidence we have set forth meets that test. State v. Corrado, 184 N.J.Super. 561, 567, 446 A.2d 1229 (App.Div.1982); State v. Hudes, supra, 128 N.J.Super. at 607-608, 321 A.2d 275.
For all the reasons stated, defendant's conviction for violating N.J.S.A. 39:4-50 is affirmed.
NOTES
[1] Defendant was found not guilty of that charge in municipal court because there was "no significant erratic operation other than the spin out."
[2] Whether N.J.S.A. 2C:35-19 is applicable to motor vehicle violations involving drivers under the influence of a controlled dangerous substance is a question not before us. The language of N.J.S.A. 2C:35-19 may be understood to be broad enough to encompass that circumstance. It may be said also that N.J.S.A. 39:4-50 is, in part, a statute concerning controlled dangerous substances by virtue of its references to "narcotic, hallucinogenic or habit-producing drug[.]"
[3] The Dohme statement was made in reference to test results demonstrating that breathalyzer ampoules were randomly tested, and the reliance upon that document by the State Police when certifying the accuracy of the breathalyzer machine.