**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0689-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

PAMELA M. TARGAN,

      Defendant-Appellant.

_____

Submitted November 27, 2018 – Decided January 3, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Municipal Appeal No. 0001-17.

Levin Pisetzner Levin, attorneys for appellant (Joseph A. Levin, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Melinda A. Harrigan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Pamela M. Targan appeals from the Law Division's order entered after a de novo trial on the record. The Law Division found defendant guilty of driving while intoxicated (DWI) in violation of N.J.S.A. 39:4-50. After reviewing defendant's contentions in light of the record and applicable principles of law, we affirm.

On January 5, 2016, defendant was issued complaint summonses for DWI; reckless driving, N.J.S.A. 39:4-96; refusal to provide a breath sample, N.J.S.A. 39:4-50.2; and obstructing the flow of traffic, N.J.S.A. 39:4-67. Following a multi-day trial in municipal court, the judge found defendant guilty of DWI but not guilty of reckless driving and refusal to provide a breath sample. The record does not reflect the disposition of the obstructing the flow of traffic charge. The municipal court judge imposed the minimum-mandatory sentence and granted a stay of the sentence pending an appeal to the Law Division.

Defendant appealed to the Law Division where Judge Jeffrey J. Waldman conducted a trial de novo on the record. In his review, the Law Division judge examined the totality of the evidence and found:

> On January 5, 2016, patrolman Alex Kuhns, of the Linwood police department was on routine patrol. Officer Kuhns arrived at a stopped vehicle with no lights, and partially in the intersection from Haines Avenue into Shore Road. Officer Kuhn[s's] attention was directed to the vehicle because of the potential

safety hazard. [Officer Kuhns] pulled his vehicle next to the stopped vehicle and asked [defendant] if she was having car trouble. Defendant responded in the affirmative. As [Officer Kuhns] pulled up behind her vehicle, [defendant] exited her vehicle and walked back towards Officer Kuhns.

As [d]efendant walked, Officer Kuhns noticed a possible limp and upon close contact, an odor of alcohol emanating from [d]efendant's breath. In addition, Officer Kuhns noticed [defendant's] slurred speech in response to his questions about her vehicle. Officer Kuhns did not check off the "slurred speech" box on the Drinking and Driving questionnaire. Defendant appeared to understand Officer Kuhn[s's] initial questions and provided an appropriate response. Officer Kuhns noted that her eyes were watery and bloodshot.

Next, Officer Kuhns asked [d]efendant for her driver's license. [Defendant] struggled to get her purse out [because] the car door . . . kept shutting on her. Officer Kuhns assisted [defendant] by holding the door open. Defendant handed [Officer Kuhns] her credit cards. Again, he asked for her driver's license. While [d]efendant had her purse open, Officer Kuhns observed two New Jersey driver's licenses and pointed them out to [d]efendant. Defendant then handed Officer Kuhns both licenses, one that had expired in 2015 and one current. As Officer Kuhns interacted with [d]efendant, he confirmed an odor of alcohol and the slurring of her words. This[,] combined with [d]efendant's difficulty in providing her driver's license and struggling to get to her feet, led Officer Kuhns to believe [defendant] may be under the influence.

At this point, Officer Kuhns called dispatch on his radio for backup so he could conduct field sobriety

A-0689-17T1

testing. Officer Kuhns asked [d]efendant if she had any physical ailments or injuries that would prevent her from completing the tests, to which, [d]efendant responded "no." She then asked, "Why are you doing this to me? I can't, this isn't going to be in the paper." Nevertheless, [d]efendant agreed to submit to the tests.

. . . .

The next and final test that Officer Kuhns administered was the single leg stand. Officer Kuhns asked [defendant] if she had any physical injuries or infirmities that would prevent her from successfully performing the test, to which she again responded "no." Officer Kuhns demonstrated how to perform the test; however, [d]efendant started to perform the test while he was still giving the instructions. This required Officer Kuhns to stop her and reiterate the instructions. During the instructional phase, [defendant] began performing the test, notwithstanding [Officer Kuhns's] direction to stay in the starting position. Defendant did not comply with the directions as she did not have the proper starting positions for the test; her feet were too wide in order to maintain her balance. Defendant was given four attempts to complete the test, but was unable to do so because she lost her balance to such a degree that Officer Kuhns was concerned that she would injure herself. At that point, Officer Kuhns terminated the test for safety reasons. Officer Kuhns testified that he had probable cause to believe [defendant] was under the influence of alcohol based on his observations, and placed her under arrest.

At the Linwood police station, [defendant] was extremely upset and crying. At one point, she was so agitated and upset that she slammed her hands down on the desk and swiped at Officer Kuhns. This behavior

4

continued until her husband arrived.  Defendant agreed to submit to breath testing.

. . . .

Sufficient evidence exist[s] to find [defendant] guilty beyond a reasonable doubt of Driving While Intoxicated.  The court supports the municipal court's assessment of Officer Kuhns['s] testimony as credible.

Here, Officer Kuhns testified [defendant's] vehicle was protruding into the intersection from Haines Avenue into Shore Road.  Because the vehicle was partially in the intersection with all the lights off, Officer Kuhns assumed [d]efendant's vehicle was disabled, which created a hazard and drew his attention.  When [defendant] exited her vehicle and met Officer Kuhns, he noticed that she had a possible limp.  Further, Officer Kuhns could smell the odor of alcohol emanating from defendant as she spoke to him.  Additionally, Officer Kuhns noticed her slurred speech with her response to his questions.  Officer Kuhns noticed her eyes were watery and bloodshot.  When Officer Kuhns asked [defendant] for her driver's license, [d]efendant struggled as the door kept shutting on her.  Officer Kuhns held the back door open as she struggled to retrieve the driver's license from her purse.  Defendant opened her purse and gave Officer Kuhns her credit cards first.  Next, Officer Kuhns pointed to her two New Jersey driver's licenses so that she wouldn't have difficulty retrieving them.

While Officer Kuhns waited for backup, he asked [d]efendant is she had any physical ailments or injuries that would prevent her from completing a series of field sobriety tests.  Defendant did not object to performing the field sobriety tests, despite her physical ailments.

5

. . . .

The next field sobriety test given was the single leg stand. [Defendant was again] asked if there were any physical injuries or infirmities that would prevent her from successfully performing the test. Defendant responded in the negative. There was nothing alerting Officer Kuhns that because of [d]efendant's age, she could not conduct the sobriety test. When Officer Kuhns gave instructions for the one leg test, [d]efendant started performing the test. When asked to stay in the starting position with her hands and feet down by her sides, she had a wide stance. Defendant indicated that she understood the verbal instructions given for the test by replying "yes."

When [d]efendant began the test prematurely, Officer Kuhns stopped her to explain that he needed to finish the instructions so that she understood. [Defendant] indicated that she did understand. Defendant did not perform the test as instructed. Defendant started the test early, did not count out loud and lost her balance to the point of concern for injury. Officer Kuhns stopped the test for safety reasons and so that the field sobriety tests could be completed. Defendant was given instructions for the test again so that she could complete it properly. The test was stopped and directions were repeated for a total of four times. Defendant was unable to successfully complete the test. [Defendant] was given only two field sobriety tests as Officer Kuhns was concerned that defendant would injure herself. Officer Kuhns determined that [d]efendant was intoxicated based on the totality of the circumstances and she was placed under arrest.

According to the Drinking and Driving Report, [d]efendant was continually leaning for balance, shouting, rambling, slobbering, boisterous, and

6

whining. Defendant was also shouting at Officer Kuhns when he was conducting the field sobriety tests and at the police station. Officer [Kuhns's] testimony also noted that her demeanor was agitated and angry. While waiting for her husband to arrive at the police station, [d]efendant slammed her hands down on the patrol desk and swiped at Officer Kuhns with her right arm. Defendant's demeanor occurred throughout the entire interaction with Officer Kuhns up until defendant left the police station. Even after [defendant] knew that her husband was at the police station, she continued yelling and screaming. Defendant was told to sit down . . . but didn't until her husband told her to sit down.

The Law Division judge then addressed the credibility of the witnesses and the weight to be given to their testimony:

> This court gives deference to the municipal court's finding that . . . Officer Kuhns was credible. His testimony was consistent, clear, and he had a good recollection of the incident. He likewise has no interest in the outcome of the case.

> While[] Dr. Burns'[s] testimony was believable, he candidly indicated that he could not state to a reasonable degree of certainty if [defendant's] medical conditions affected her performance on the sobriety tests.

> This court finds defendant's testimony to be inconsistent with her actions and appearance at the time of arrest. Her actions at the time of the stop, inability to respond to instructions, fumbling, bloodshot eyes, odor of alcohol, out of control behavior and inability to complete field sobriety tests, were indicative of her intoxication.

7

With respect to the testimony of Donald Targan, he was not present while defendant was drinking, nor at the time of the stop and arrest. Accordingly, this court gives his testimony little weight.

. . . .

As to the remaining field sobriety tests employed, Mr. Flanagan testified that physical condition can affect a person's ability to perform. However, as was indicated supra, [d]efendant's medical witness was unable to correlate her condition with her failure to complete the tests or follow the instructions to do so. Accordingly, this court gives Mr. Flanagan's testimony little weight.

The Law Division judge found defendant guilty of DWI beyond a reasonable doubt. The court imposed the same fines and penalties as the municipal court sentence: a three-month driver's license suspension, twelve hours of Intoxicated Driver Resource Center classes, and the requisite fines, surcharges, fees, and costs. The court did not impose jail time or require installation of an ignition interlock device. The Law Division granted a stay of the sentence pending appeal.

In this appeal, defendant argues:

POINT I
THE MUNICIPAL COURT FAILED TO UTILIZE THE PROPER STANDARD OF PROOF IN RENDERING ITS VERDICT AND, AT A MINIMUM, THE SUPERIOR COURT SHOULD HAVE REMANDED THE MATTER FOR A NEW TRIAL

8

BEFORE A NEW MUNICIPAL COURT JUDGE
WITH INSTRUCTIONS TO EMPLOY THE PROPER
BEYOND A RE[A]SONABLE DOUBT STANDARD.

POINT II
THE MUNICIPAL AND SUPERIOR COURTS
FAILED TO ASSESS THE CREDIBILITY OF THE
DEFENSE WITNESSES AND IMPROPERLY
WEIGHED THE TESTIMONY OF THE POLICE
OFFICER.

POINT III
IF THIS HONORABLE COURT WERE TO UTILIZE
THE PROPER STANDARD OF PROOF AND WERE
TO MAKE THE PROPER CREDIBILITY
ASSESSMENTS, THEN THE COURT WOULD
RIGHTLY FIND THE DEFENDANT NOT GUILTY
OF DRIVING WHILE INTOXICATED.

Our standard of review is well-settled. When a defendant appeals a conviction of a motor vehicle violation following a trial de novo in the Law Division, the scope of appellate review is both narrow and deferential. State v. Stas, 212 N.J. 37, 48-49 (2012). The trial judge's factual findings will not be disturbed where they are supported by sufficient credible evidence in the record. State v. Locurto, 157 N.J. 463, 471 (1999).

Law Division judges in a trial de novo must make their own independent findings of fact since they undertake "an independent fact-finding function in respect of defendant's guilt or innocence." State v. Cerefice, 335 N.J. Super. 374, 383 (App. Div. 2000) (citing State v. Avena, 281 N.J. Super. 327, 333 (App.

9

Div. 1995)).  "Nevertheless, even on de novo review, the Law Division judge must give due, although not necessarily controlling, regard to the opportunity of the trial judge to judge the credibility of the witnesses."  Ibid.  Furthermore, when the Law Division agrees with the municipal court, the two-court rule must be considered.  "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error."  Locurto, 157 N.J. at 474.  "However, no such deference is owed to the Law Division or the municipal court with respect to legal determinations or conclusions reached on the basis of the facts."  Stas, 212 N.J. at 49.

We affirm substantially for the reasons expressed by Judge Waldman in his well-reasoned and comprehensive letter opinion.  We add the following comments.

Based on the municipal court judge's use of the word "contest" in his oral decision, defendant contends she was improperly convicted by a preponderance of the evidence rather than beyond a reasonable doubt.  The transcript reveals the municipal court judge never stated the legal standard he employed to find the defendant guilty.

The standard of proof employed by the municipal court judge does not control this case. In an appeal from a de novo hearing on the record, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001) (citing State v. Joas, 34 N.J. 179, 184 (1961)). The Law Division judge expressly found defendant guilty beyond a reasonable doubt. Defendant's argument that the Law Division judge should have remanded the case to the municipal court for a new trial lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

New Jersey law prohibits the operation of "a motor vehicle while under the influence of intoxicating liquor . . . ." N.J.S.A. 39:4-50(a). Our courts have defined "under the influence" as "a substantial deterioration or diminution of the mental faculties or physical capabilities of a person . . . ." State v. Bealor, 187 N.J. 575, 589 (2006) (quoting State v. Tamburro, 68 N.J. 414, 420-21 (1975)).

> Expert proofs are not a necessary prerequisite for a conviction for driving while under the influence of alcohol. Thus, for example, even in the absence of expert proofs of a defendant's blood alcohol concentration, a conviction for driving while under the influence of alcohol will be sustained on proofs of the fact of intoxication – a defendant's demeanor and physical appearance – coupled with proofs as to the cause of intoxication – i.e., the smell of alcohol, an admission of the consumption of alcohol, or a lay

11

opinion of alcohol intoxication. See State v. Cryan, 363 N.J. Super. 442, 454-55 (App. Div. 2003) (sustaining conviction for driving while intoxicated based on proofs of defendant's bloodshot eyes, hostility and strong odor of alcohol); State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002) (sustaining conviction based on defendant's "driving without his headlights on" and police officer's observations of defendant's "strong odor of alcohol on defendant's breath[,]" "swaying as he walked[,]" inability to perform physical coordination test, slurred speech, and combativeness); State v. Oliveri, 336 N.J. Super. 244, 251-52 (App. Div. 2001) (sustaining conviction on "alternative basis" of proofs that "defendant's eyes were watery and his speech slow and slurred[;]" defendant's inability to follow commands, defendant's admission of alcohol consumption earlier that day, defendant's staggering when walking, and defendant's failure to complete successfully various physical coordination tests); State v. Bryant, 328 N.J. Super. 379, 383 (App. Div. 2000) (holding that "the prosecutor could have proceeded on the driving under the influence charge by utilizing evidence other than the breathalyzer results.").

[Bealor, 187 N.J. at 588-89.]

Thus, it is well-established that an officer's subjective observation of a defendant is a sufficient ground to sustain a DWI conviction. That is the case here.

Defendant admitted to drinking two glasses of wine. Her car was stopped partially into an intersection. When Officer Kuhns pulled his patrol vehicle behind defendant's car, she exited her vehicle and staggered and swayed toward

the patrol car. Defendant exhibited an odor of alcohol on her breath, slurred speech, watery and bloodshot eyes, a flushed face, unusual mood swings, and initially presented credit cards when asked for her driver's license. She was unable to perform field sobriety tests. Defendant was clearly "under the influence of intoxicating liquor."

Defendant presented expert testimony by Dr. Leo Burns, an emergency room physician. Notably, Dr. Burns never examined defendant. Instead, he relied solely on his review of defendant's medical records. Dr. Burns could not state within a reasonable degree of certainty if defendant's medical conditions affected her performance on the sobriety tests. "[T]he weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated." State v. Jenewicz, 193 N.J. 440, 466 (2008) (alteration in original) (quoting Johnson v. Salem Corp., 97 N.J. 78, 91 (1984)); see also Model Jury Charges (Criminal), "Expert Testimony" (rev. Nov. 10, 2003). The factfinder may reject the testimony of an expert "even if that testimony is unrebutted by any other evidence." State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004).

In this case, the Law Division judge clearly understood that his role was to make independent findings; findings that, ultimately, were reflected in his

written opinion. The judge examined the totality of the evidence and rendered detailed findings of fact and conclusions of law. Judge Waldman's factual findings, credibility determinations, and legal conclusions are supported by sufficient credible evidence in the record. The officer's observations coupled with the surrounding circumstances provide ample evidence of defendant's guilt. We discern no basis to disturb the Law Division judge's determination that defendant was guilty of DWI beyond a reasonable doubt.

The stay of sentence entered by the Law Division is terminated. Defendant shall turn in her driver's license to the Linwood Municipal Court within five days of the date of this opinion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0689-17T1