**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1403-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEBRA CARL,

    Defendant-Appellant.

_____

Submitted November 19, 2025 – Decided March 5, 2026

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. 9-2024.

Antonio J. Toto Esq. LLC, attorney for appellant (Antonio J. Toto, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Debra Carl appeals from her de novo conviction for driving

while intoxicated (DWI), N.J.S.A. 39:4-50 after a de novo review by a Law Division judge. She contends her conviction should be vacated because the State violated her right to a speedy trial. She also argues the State failed to prove she was driving "under the influence," asserting prior medical procedures prevented her from performing field sobriety tests and that she had no other physical signs of intoxication—her blood pressure, pulse, and body temperature were all within normal ranges. We affirm.

I.

We draw the following facts from the trial record. On February 14, 2019, South Brunswick Police responded to a two-car motor vehicle accident involving defendant and another driver. As he arrived and began speaking with the other driver, Officer William Merkler twice ordered defendant to stay near her vehicle. When he asked defendant for her driving credentials, she appeared intoxicated. First, he saw defendant's "hand movements were slow and fumbling" and her head was slumped forward, which he described as "being on the nod." She appeared lethargic, exhibited a dry mouth, had "droopy" eyes and her pupils were constricted. She also displayed a "blank stare" and appeared to be either "looking past [him] or drifting off[.]"

A-1403-24

Officer Merkler conducted three field sobriety tests: the horizontal gaze nystagmus,[1] the "walk and turn," and "one leg stand." Officer Merkler determined defendant failed all three tests as she did not follow the stimulus with her eyes, "had difficulty maintaining balance[,]" "took the incorrect number of steps[,]" and had trouble finishing the one-leg test. The officer testified defendant commented "to the effect that she could [not] do [the one-leg test] sober." When Officer Merkler asked if she took any medications, defendant replied she had taken Clonazepam and blood pressure medication.

Officer Merkler arrested defendant for DWI and brought her to the police station, where Detective Timothy Hoover, a drug recognition expert (DRE), evaluated her. Defendant took an Alcotest and her Blood Alcohol Content test result was zero; indicating she had no alcohol in her system. She told Detective Hoover she "had taken Klonopin, Percocet, [T]razodone, and blood pressure medications." The detective conducted pulse, body temperature, and blood pressure tests which revealed "average," results, but her "pupils ha[d] little to no reaction to direct light and were constricted more than average[.]" Further, a urinalysis test "was positive for oxycodone, a type of fentanyl, [H]ydroxyzine,

_____

[1] Nystagmus is the involuntary rhythmic oscillation or movement of the eyeballs. Stedman's Medical Dictionary 1350 (28th ed. 2006).

A-1403-24

and [T]razodone." The police issued a summons for violation of N.J.S.A. 39:4-50, DWI.

After initial trial adjournments, one to accommodate defense counsel's vacation, trial began on August 20, 2019. The State presented testimony of Officer Merkler. At the conclusion of his testimony, the following colloquy ensued:

> THE COURT: Okay. Any questions based on my question [to Officer Merkler]?
>
> DEFENSE COUNSEL: No Your Honor.
>
> PROSECUTOR: No Your Honor. And for the record[,] the State intends to proffer the next witness, Det. Hoover, who would be the DRE and then also there is a lab tech that will be testifying as well. I did discuss with [defense counsel] the scheduling as to this, as to whether or not this case would be bifurcated over multiple sessions and he agreed that after the testimony of [Officer] Merkler if we could recess and come back another day with the testimony of [Detective] Hoover and the chemist in this case as their testimony more closely relates to one another as opposed to [Officer] Merkler's initial testimony. So I certainly have no objection at this time recessing or adjourning at this time for the State to continue at another date.
>
> THE COURT: Okay. So there is nothing further for [Officer] Merkler?
>
> DEFENSE COUNSEL: No Your Honor.

A-1403-24

PROSECUTOR: The State -- and just for the record, State does reserve the right to recall [Officer] Merkler as -- if testimony warrants it, but does not anticipate having to recall him at this time.

THE COURT: Thank you officer. [Defense counsel], so do you agree with the State that you wanted to bifurcate?

DEFENSE COUNSEL: Sure, absolutely.

THE COURT: Okay. Do we need to get a new date today?

DEFENSE COUNSEL: I'm sorry Your Honor.

THE COURT: It will be good to get a new date today so we know when we are coming back.

PROSECUTOR: I would need to subpoena the chemist Your Honor, so that date --

THE COURT: Okay.

PROSECUTOR: -- if we can get a date for that, that would be fine. I think their schedule is going to be malleable, so if we can just schedule it around whenever Det. Hoover is available --

DEFENSE COUNSEL: And I'll work with the [c]ourt, its staff and [the prosecutor] to get it accomplished Your Honor.

THE COURT: Okay. So you know what, we will just -- you guys will get the date, you can work with the [c]ourt staff because I don't have any --

5

A-1403-24

PROSECUTOR: I'll contact the [c]ourt tomorrow Your Honor to get the date. And I'm sure that will be relayed to [defense counsel].

The case was adjourned to October 15, however, a copy of the transcript for that date is not in the record. In its merits brief, the State represents:

> [Detective] Hoover testified in municipal court on October 15, 2019; however, defendant has not supplied this transcript for this appeal. The transcript was before the Law Division on the appeal de novo, and [the judge] outlined not only [Detective] Hoover's testimony but also the lab results, which were also admitted into evidence on October 15, 2019. [The judge] in municipal court also outlined [Detective] Hoover's testimony in her verdict finding defendant guilty.

The next proceeding transcript is dated December 20, 2023. On that date, defense counsel moved to dismiss based on a purported violation of defendant's right to a speedy trial. In denying the motion, the municipal court judge recited the case's procedural history:

> On March the 21st, 2019 this was set for trial. The defendant was to provide a Holup[2] order in 30 days, consent to search for urine lab results, video, if available.
> March the 30th, 2019 the prosecutor['s] extension of 30 days to get the labs to defendant. The matter to be scheduled in 45 days unless the defendant secures a written letter from the health care provider stating the

---

[2] State v. Holup, 253 N.J. Super. 320 (App. Div. 1992) (concerning procedures for the State to provide discovery to defendants involving State and local police).

defendant cannot participate in her defense. I have never received that letter.

June the 27th, 2019 it was set for trial, shortly after on July the 20th, 2019 the attorney was on vacation . . . . Trial was held August the 20th, 2019, October the 15th, 2019.

The State presented its arguments, we had the pandemic. During the time of the pandemic in 2020, 2021 no trials we held for a period of time and then there was a backlog of several trials. So all trials were held in backlog. Then on July the 26th, 2023 the defendant appeared for the entire [c]ourt session, the attorney did not appear.

The defendant called him several times, he stated he was held up in Piscataway. The trial was then set for October the 25th at 11 a.m. October the 25th at 11 a.m. there was a conference between the then prosecutor . . . and [defense counsel] with the [c]ourt.

There was a discussion of speedy trial. At that time it is noted that I tell everyone I need things in writing. . . . The matter . . . can be dismissed if . . . the speedy trial motion was submitted[.] [I]t was not.

[Defense counsel] was supposed to be substituting for [former defense counsel]. That information was shared with [the prosecutor]. During the course of any discussion even in the [c]ourt we did an update of what information, at one point I was told people didn't testify who did testify, so there had to be some time for everybody to get on the same page.

We are now in [c]ourt December the 20th, 2023, I have heard this motion. It appears to me though that after the pandemic on at least two occasions we were waiting for counsel to enable [us] to move forward. A[s a] matter of fact, the defendant actually spent an entire session waiting for her attorney to move forward. That is certainly not the State's responsibility or the [c]ourt[']s.

7

Bearing that in mind[,] the motion for this speedy trial based on all the arguments that were made by the State, including the global pandemic in assertion of a speedy trial that could have been made any time from 2022 on 'til now in written form. To do it here today when several of the hearings were held up because of counsel seems to be inappropriate. Bearing that in mind[,] the motion for a speedy trial is denied.

Immediately after the municipal court judge denied the motion, the case proceeded with defendant's testimony. At the conclusion of the municipal court trial, counsel presented closing arguments. The prosecutor highlighted defendant's conduct during the traffic stop as shown in the patrol vehicle's mobile video recording. The video was admitted in evidence at trial before the municipal court judge but was not referenced by the Law Division judge or submitted to this court as part of the record on appeal.

At the conclusion of arguments, the municipal court judge stated she would review her trial notes and video of the traffic stop. On March 20, 2024, the judge placed her findings on the record. Citing State v. Olenowski, 255 N.J. 529, 607 (2023), she observed that in cases involving drugs rather than alcohol, two essential elements must be proven: "(1) the defendant was intoxicated[;] [and] (2) the cause of the intoxication was narcotics, hallucinogens, or habit-producing drugs." The judge also recognized the Court's holding in Olenowski and "that DRE testimony [cannot], in and of itself, establish impairment." 255

8

N.J. at 607. She found, "[t]he record is clear, the officers were credible, the testimony – just given a glance at the video would show that the defendant was impaired." The judge observed, "just because it was prescribed medication doesn't mean that it can't have a bad effect, that is why there [are] warnings on the labels." The judge recounted her observation of defendant attempting to complete the field sobriety tests, "none of which was successful." Based on those observations, the judge stated, "I believe that the DRE's testimony was able to show that there was some indication that there . . . were drugs in the defendant's system which impaired her ability to drive appropriately." She concluded, "it is clear that [defendant] was under the influence when she was stopped. There is no doubt, there is just none." Finding defendant guilty, the judge imposed a seven-month loss of driving privileges and assessed mandatory fines and penalties.

Defendant appealed to the Law Division. The Law Division judge heard argument on December 13, 2024. After de novo review of the record, the judge affirmed the DWI conviction and sentence. He applied the four-factor balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972), to determine whether defendant's right to a speedy trial had been violated, ultimately weighing all factors against defendant. First, he calculated the delay from date of arrest to

9

the first trial date to be 187 days, concluding that not to be "an unreasonable amount of time." Next, he considered the time between the last day of trial and its continuance until resumption of trial in December 2023. He referenced the impact of the COVID-19 pandemic, in which "the world was thrown into turmoil for . . . quite a period of time." Further, he observed that defendant's "right wasn't asserted, at least until the very last minute." Finally, noting that the record did not contain a certification reflecting defendant had suffered a loss of employment, the judge determined the delay "doesn't seem to have prejudiced the defendant's case in any way . . . ."

In response to defendant's claim that there was no evidence of intoxication, the judge found,

> she did not do well in the field sobriety tests. She, at one point, was having difficulty standing and balancing and doing so without support. All those things in my mind suggest to me somebody under the influence. And that makes sense when you get to the other half of the test[,] and that's the . . . actual drugs at issue.

In concluding defendant was guilty of driving under the influence, the judge stated, "there's really no dispute as far as whether the drugs were in her system. The real dispute here is whether they affected her driving . . . and I am going to find that they affected her driving."

Defendant's appeal followed.

## II.

A municipal court decision may be appealed to the Law Division.  See R. 3:23-1; R. 7:13-1.  "In the Law Division, the trial judge 'may reverse and remand for a new trial or may conduct a trial de novo on the record below.'"  State v. Robertson, 228 N.J. 138, 147 (2017) (quoting R. 3:23-8(a)(2)).  "At a trial de novo, the court makes its own findings of fact and conclusions of law but defers to the municipal court's credibility findings."  Ibid. (citing State v. Ross, 189 N.J. Super. 67, 75 (App. Div. 1983)).  "It is well-settled that the trial judge 'giv[es] due, although not necessarily controlling, regard to the opportunity of the' municipal court judge to assess 'the credibility of the witnesses.'"  Id. at 148 (quoting State v. Johnson, 42 N.J. 146, 157 (1964)).

In reviewing the Law Division's decision on a municipal appeal, we "consider only the action of the Law Division and not that of the municipal court."  State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001) (citing State v. Joas, 34 N.J. 179, 184 (1961)).  On appeal from the Law Division's decision, our review "focuses on whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings."  Ibid. (quoting Johnson, 42 N.J. at 162).  "[A]ppellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by [the municipal court

and Law Division] absent a very obvious and exceptional showing of error." Ibid. (quoting State v. Locurto, 157 N.J. 463, 474 (1999)). However, we review the Law Division's legal rulings de novo. Ibid.; see also Locurto, 157 N.J. at 470 (appellate review of a de novo conviction in the Law Division following a municipal court appeal is "exceedingly narrow").

"[T]he right to a speedy trial, guaranteed by the United States Constitution, U.S. Const. amend. VI, [is] a fundamental right applied to the states by the Due Process Clause of the Fourteenth Amendment." State v. Cahill, 213 N.J. 253, 264 (2013) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). Thereafter in Barker, the Court "identified four non-exclusive factors that a court should assess when a defendant asserts that the government denied his [or her] right to a speedy trial[.]" Cahill, 213 N.J. at 264 (citing Barker, 407 U.S. at 530). The four factors are: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted the right, and (4) prejudice to the defendant. Ibid.

As to the first Barker factor, the court instructed "a delay may be presumptively prejudicial and such a delay will trigger consideration of the other factors." Ibid. (citing Barker, 407 U.S. at 530). "The length of the delay . . . considered presumptively prejudicial depends on the circumstances of the

individual case, including the nature of the charged offense." Id. at 264-65 (citing Barker, 407 U.S. at 530-31).

Second, a court must evaluate the "lapse of time between indictment and trial." Id. at 265. "[T]his factor requires consideration of the amount of time customarily required to dispose of similar charges, and the defendant has the obligation to establish that customary period." Ibid. (citing Doggett v. United States, 505 U.S. 647, 651-52 (1992)). "[T]he lapse of time . . . trigger[ing] a violation . . . depends on the nature of the charges lodged against the defendant." Ibid.

Third, "once the delay exceeds one year, it is appropriate to engage in the analysis of the remaining Barker factors." Id. at 266. "A defendant does not have an obligation to assert his right to a speedy trial because he is under no obligation to bring himself to trial." Ibid. (citing Barker, 407 U.S. at 527). Even so, "'[w]hether and how a defendant asserts his right is closely related' to the length of the delay, the reason for the delay, and any prejudice suffered by the defendant." Ibid. (quoting Barker, 407 U.S. at 531). "As such, the assertion of a right to a speedy trial in the face of continuing delays is a factor entitled to strong weight when determining whether the state has violated the right." Ibid. (citing Barker, 407 U.S. at 531-32).

Fourth, "prejudice is assessed in the context of the interests the right is designed to protect." Ibid. (citing Barker, 407 U.S. at 532). "Those interests include prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense." Ibid. (citing Barker, 407 U.S. at 532). The reviewing court gives deference to the trial court's supported factual findings in assessing and balancing the Barker factors. State v. Fulford, 349 N.J. Super. 183, 195 (App. Div. 2002).

As a primary reason for the length of delay, the Law Division judge cited the COVID-19 pandemic, the suspension of municipal court trials, and consequent backlog. On de novo review, we concur. The extraordinary delays occasioned by the pandemic indisputably exacerbated the delay in resumption of trial. This circumstance cannot be weighed against the State.

Moreover, New Jersey courts have held delays longer than the sixty-day goal for disposition of DWI cases were reasonable. See, e.g., State v. Szima, 70 N.J. 196, 202 (1976) (concluding a twenty-two-month delay was not unreasonable); Fulford, 349 N.J. Super. at 190, 195 (App. Div. 2002) (upholding denial of defendant's speedy trial motion despite thirty-two-month delay attributable to the State where the delay benefited defendant by allowing him to

14

retain his driver's license); State v. Prickett, 240 N.J. Super. 139, 141, 148 (App. Div. 1990) (affirming Law Division judge's denial of speedy trial motion in a DWI case where the trial occurred more than six months after arrest through no fault of defendant).

We turn next to defendant's assertion of her speedy trial right. Although defendant had no obligation to bring herself to trial, no effort was made by defendant to enforce her right until the trial resumed approximately fifty months after its last session. Thus, defendant's claim of a speedy-trial violation is diminished, if not undermined, by the fact that the trial had already begun. Once commenced in substance, under these circumstances, it cannot meaningfully be said that the right to speedy trial was denied. Cahill, 213 N.J. at 264-65.

Regarding prejudice, the Law Division judge referenced the absence of a certification attesting to any harm suffered. Absent a certification, there is nothing in the record reflecting any restriction of defendant's liberty or ability to work. We note that during the fifty-month interlude, no interim punishment was imposed by the municipal court. We acknowledge that "[a] speedy trial violation can be established without evidence of prejudice." Cahill, 213 N.J. at 274 (citing State v. Farrell, 320 N.J. Super. 425, 446 (App. Div. 1999)). Nonetheless, without reference to any particular harm and giving deference to

the Law Division assessment of the facts underlying its analysis of the three remaining Barker factors, we are satisfied defendant was not deprived of her right to a speedy trial. Fulford, 349 N.J. Super. at 195.

Adequacy of Proofs

In DWI cases involving substances other than alcohol, in addition to proving defendant "operat[ed] a motor vehicle," the State must establish "(1) the defendant was intoxicated and (2) the cause of the intoxication was either narcotics, hallucinogens, or habit-producing drugs." Olenowski, 255 N.J. at 550. In such cases, the facts and proofs of cause of the intoxication must be interconnected. Id. at 549. Examples include "proofs of . . . 'slurred and slowed speech,' . . . 'droopy eyelids,' . . . 'fumbl[ing],' . . . and an 'emotionless stare.'" Ibid. (quoting Bealor, 187 N.J. at 589-90). The record reflects defendant exhibited all of these features. These observations "may be linked with physical evidence of an intoxicating drug . . . in the driver's control, and 'the presence of [an intoxicating drug] in [the] blood stream at the time of the arrest and its likely source.'" Id. at 549-50 (quoting Bealor, 187 N.J. at 589-90).

Defendant claims "the State never proved [she] was 'under the influence'" because all her physical capabilities were in the normal range and she could not perform the field sobriety tests due to her "three previous back operations[.]"

16

Tellingly, defendant disputes neither that she was operating a motor vehicle, nor that she had narcotics in her system while she was driving. Defendant argues that she was not intoxicated by the narcotics in her system. However, she provides no support from the record to support this claim. She submitted neither a transcript of Detective Hoover's testimony nor a video recording of the traffic stop to this court to challenge the conclusion of the municipal court and Law Division that she was impaired while driving and therefore guilty of driving while intoxicated. State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (explaining it is the appellant's responsibility to provide the facts, record, and legal argument that flows from the facts to allow an independent assessment of the merits of an appeal). Our ability to properly exercise our appellate function is hampered where the appealing party does not provide the complete record and legal argument supporting its position. See e.g., Noren v. Heartland Payment Sys., Inc., 449 N.J. Super. 193, 195-96 (App. Div. 2017) (denying appellate relief where the party failed to "submit the items that had been submitted to the trial court on the summary judgment motion or even a statement of the items submitted," preventing the court from reviewing "the original summary judgment" motion).

On de novo review of the record, and with due deference to the Law

A-1403-24

Division's factual findings, we are satisfied that sufficient reliable evidence in the record provided on appeal supports the determination of defendant's guilt beyond a reasonable doubt. For the reasons expressed, we are also satisfied defendant's right to speedy trial was not violated.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1403-24