**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0095-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVIS SANTIAGO,

    Defendant-Appellant.

_____

Argued September 20, 2017 — Decided July 12, 2018

Before Judges Fuentes, Koblitz, and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Municipal Appeal
Nos. 009-07-15 and 009-06-15.

Carmine R. Alampi argued the cause for
appellant (Alampi & De Marrais, attorneys;
Carmine R. Alampi, on the brief).

Annmarie Cozzi, Senior Assistant Prosecutor,
argued the cause for respondent (Gurbir S.
Grewal, Bergen County Prosecutor, attorney;
Annmarie Cozzi, of counsel and on the brief).

PER CURIAM

    Defendant Davis Santiago appeals from his July 17, 2015

convictions for driving while intoxicated (DWI), N.J.S.A. 39:4-

50, which were his second and third convictions under that statute.

He was convicted following de novo review in the Law Division of two municipal court appeals. Defendant claims that it was error to preclude him in both cases from calling an expert witness to testify about his "pre-existing physical impediments" and, in one of the cases, to admit the results from the Alcotest. He also appeals from the July 24, 2015 order that denied reconsideration of his request to stay the imposed fines and penalties.[1] We affirm both convictions.

## I.

On August 30, 2013, defendant was charged with DWI, following a motor vehicle stop in Montvale. The police stopped him again on September 13, 2013, in Park Ridge and arrested him on a new DWI charge.

The Montvale case was tried on October 23, 2014, in municipal court. Defendant was convicted of DWI based on the Alcotest results that showed a .15 percent blood alcohol concentration (BAC). This was his second offense for driving while intoxicated.

The Park Ridge case was tried on November 20, 2014, before the same municipal court judge. Defendant again was convicted of

---

[1] Because this issue was not raised in his merits brief, it is deemed waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

DWI. This was his third conviction. The conviction was based on observation evidence, not on the result of the Alcotest.

Defendant appealed both cases to the Law Division. Following de novo review, a Superior Court judge found defendant guilty of DWI in both cases. In the Montvale case, the judge found a per se violation of N.J.S.A. 39:4-50, based on the Alcotest and also convicted defendant based on observation evidence. Because this was his second violation, his driver's license was suspended for two years, he was required to attend the Intoxicated Drivers Resource Center (IDRC) for two days, install an interlock device for a year, and pay fines, penalties and costs.

In the Park Ridge case, the judge held there was probable cause for the motor vehicle stop. The court based defendant's conviction on observation evidence, and not on the Alcotest. The court denied defendant's request, in both cases, to have Dr. Paul Greenberg, a podiatrist, testify about defendant's feet, knee and back, finding his 2014 report was not relevant because it did not address whether defendant's physical conditions in 2013, affected his ability to perform the roadside sobriety tests.

In the Park Ridge case, defendant was sentenced to 180 days in jail, ninety days of which could be served at a treatment center. His driver's license was suspended for ten years, an

interlock device was required and he was ordered to pay fines, penalties and costs. He was sentenced to twelve hours at IDRC. He was to perform thirty days of community service. This sentence was to be served consecutive to the Montvale sentence.

A.

The Montvale Case

On August 30, 2013, at about 1:18 a.m., Montvale Police Sergeant Douglas McDowell was on patrol when he saw a car cross over the double centerline as it approached him, causing McDowell to steer to the right to avoid the car. He turned to follow the car. The driver went right at an intersection, turning so widely that the vehicle entered into the adjacent left hand turn lane. The driver then over-corrected going "really close to the curb line." The driver pulled into a bar/restaurant where McDowell stopped him and asked for identification. McDowell described that defendant "was fumbling the documents." He "passed over his driver's license . . . several times before he got it." His "speech was slow and slurred, . . . his eyes were bloodshot and watery." McDowell smelled alcohol on his breath. McDowell asked defendant to step out of his vehicle. He was "very . . . wobbly, unsteady." He held onto the door and side of the car. He was "swaying" and "lost his balance."

McDowell asked defendant to perform the "walk-and-turn" and the "one-leg stance" tests. On the first test, he did not take the proper number of steps; he did not count out loud as he had been instructed; he had his arms out for balance, stepped backwards and did not walk in a straight line, failing the test. For the one leg-standing test, defendant miscounted and put his foot on the ground, failing that test. McDowell concluded that defendant was intoxicated. Once at the station, McDowell described that defendant's "eyes were bloodshot, watery, his speech was slow and slurred."

Montvale Patrolman Jeffrey Hanna also observed that defendant's eyes were watery and bloodshot. He detected the odor of alcohol from defendant. He believed based on his observations and experience that defendant was intoxicated.

On the Drinking Driving Questionnaire, defendant answered that he was not injured or under the care of a doctor. He admitted having three to four beers between 10:30 p.m. to midnight with a meal at 10 p.m. He did not say anything about physical problems.

The Alcotest machine at the Montvale department did not work properly. Defendant was taken to Park Ridge Police Department for the test. Hanna observed defendant for twenty minutes, and commenced testing at 3:18 a.m. The first test was taken at 3:46

a.m. The third was taken at 3:51 a.m. They both showed a reading of .15 percent BAC. The second test could not be used because the "minimum [breath] volume [was] not achieved." Hanna described the procedures, which involved inserting a new mouthpiece for the tests.

The Montvale case was listed for trial on June 9, 2014. Defendant's expert witness, Kevin M. Flanigan, was not available until July. Just days before trial, defendant's counsel served an expert report from Dr. Richard Saferstein, to testify about the Alcotest. Because of a professional conflict with Dr. Saferstein, the municipal court judge disqualified himself sua sponte. In disqualifying himself, the municipal court judge stated: "You have made your bed, and now you're going to sleep in it . . . . While I will recuse myself, . . . I am also going to indicate within that order that the only expert that you can use in this matter is Dr. Saferstein [.]" The June 11, 2014 order also transferred the case for reassignment, providing that "the defense expert shall be none other than Richard Saferstein, Ph.D."

The case was reassigned to another municipal court judge. A week before the October 23, 2014 trial, defendant served an expert report dated August 19, 2014 from Dr. Greenberg, a podiatrist. The report concluded that defendant's "gait evaluation" was

A-0095-15T4

"abnormal" because of bilateral heel spurs, bunions, shortened Achilles tendons, knee surgery, adhesions from hernia repair, loss of weight and tight shoes. Defendant was not able to perform the "one leg stand" and "walk and turn" tests when Dr. Greenberg examined him on August 13, 2014.

At trial, no one could remember why the June 11, 2014 order appeared to limit defendant to one expert, and no transcript was available. The judge barred Dr. Greenberg's testimony based on the June 11, 2014 order. McDowell and Hanna testified at the trial to the facts involving defendant's arrest, field sobriety testing and Alcotest.

Dr. Saferstein testified about the Alcotest. He alleged that Hanna did not testify directly about changing the mouthpiece before the third test. He also claimed the observation period had not been long enough.

Defendant admitted having three beers with his meal. He testified that he swerved into the other lane because he was texting. He denied making a wide right turn at an intersection. He denied having difficulty retrieving his driver's license. He denied having any difficulty performing any of the field sobriety tests, but claimed he could not do them that day because of pain in his feet and legs.

7

Defendant testified that he suffered from heel spurs that caused him "to hobble" and "can't really stay on [his] feet a long time." He had be treated with cortisone injections in the past, had left knee surgery in 2009 for a torn meniscus and had bilateral hernia surgery in 1998. He claimed he told McDowell at the scene that he was going to have difficulty performing the tests while wearing his shoes.

The municipal court judge found the testimony of the two officers to be credible. He held that there was probable cause for the motor vehicle stop and arrest based on McDowell's observations. He rejected defendant's arguments attacking the reliability of the Alcotest, finding that the tests were administered properly. The municipal court judge convicted defendant of operating his vehicle on August 30, 2013, while intoxicated in violation of N.J.S.A. 39:4-50.

B.

The Park Ridge Case

At 2:10 a.m. on September 13, 2013, Officer John Szot of the Park Ridge Police Department saw a vehicle make a left turn onto Pascack Road and accelerate very quickly "grabbing [his] attention." The driver made a right turn at a red light. The vehicle was moving quickly. Szot saw the vehicle make a wide turn

onto another street. He turned on the siren and overhead lights, but the vehicle did not stop. The driver, later identified as defendant, put on his left directional signal, turned left, and then pulled into his driveway. Szot testified defendant had been driving over the posted speed limit, failed to stop at a red light and failed to keep right before making a wide turn. Defendant also failed to stop for the siren and lights.

Defendant produced his driver's license at the officer's request. Szot detected a faint odor of alcohol coming from the vehicle, but a strong odor of cologne. Defendant was "sweating profusely." He "had bloodshot, watery eyes, his . . . movements were slow, lethargic, he was shaking a little bit because he . . . appeared to be nervous." He also was slurring his words. His face was "very flush." Defendant produced the requested registration but not his insurance card. Defendant was "fumbling" looking for the documents.

Defendant told Szot he was coming from a friend's house. He denied having had any alcohol. Defendant could not satisfactorily recite the alphabet from D to Q; did not accurately count backwards from 69 to 54; and staggered as he got out of his vehicle.

Szot again noticed an odor of alcohol as he conducted the field sobriety tests. Defendant did not tell Szot he would have

any problem performing the tests because of a physical condition. Defendant did not successfully perform the heel-to-toe test, raising his arms for balance, stepping off the line, turning incorrectly and taking the wrong number of steps. He also did not count aloud as instructed. On the one-leg stand test, defendant raised his arms, put the other foot down, and swayed. Szot testified that based on his experience and observation, defendant was intoxicated and placed him under arrest.

Once at the police station, Szot testified the "odor of an alcoholic beverage became more apparent." He observed defendant for a full twenty minutes beginning at 2:53 a.m. Defendant told Szot as they completed the in-custody screening form that he had surgery on his left knee and heel spurs on both feet.

Sergeant Peter Mauro performed the Alcotest. He noted that defendant's eyes were "bloodshot and watery." He smelled an odor of alcohol on defendant's breath. Defendant was slurring his words. Mauro also concluded that defendant was intoxicated.

Mauro entered defendant's "pedigree" information into the Alcotest machine and waited for the twenty-minute observation period to elapse. He checked to make sure everyone was free of electronic devices. He put a new mouthpiece on the hose for the first and second test. On cross-examination, he testified that

the observation period commenced at 2:53 a.m. and the first test was completed at 3:13 a.m., although there may have been a discrepancy in the clocks that were used.

Mauro could not access the computer to enter the readings "through the calculator," so he called an officer at the Montvale police department who ran the readings through the calculator and physically brought the results over to Mauro. The reading was .13 percent BAC.

The municipal court judge "reaffirmed" his prior order of June 11, 2014, that barred expert witnesses other than Dr. Saferstein. Also, Flanigan was not available to testify about the Alcotest. The court concluded there was probable cause for the motor vehicle stop, denying defendant's motion to suppress the police videotape. The municipal court found Szot's testimony credible that he could not catch up to defendant and that "[defendant] was clearly going in excess of a speed that's required on a residential road" in the Borough. The municipal court judge found defendant guilty of DWI based on observation evidence from the police officers who he found to be credible. He rejected the Alcotest results, however, because there was reasonable doubt about whether the twenty-minute observation period had elapsed.

Superior Court De Novo Review

Defendant appealed the convictions under the process codified in Rule 3:23-1 to -9. On July 15, 2015, both convictions were heard de novo in the Law Division based on the municipal court record. See R. 3:23-8. The trial court found that Dr. Greenberg's report had been properly excluded because it was not served on the State until a week before the Montvale trial. Independent of this discovery violation the report also was "not relevant" because it never gave an opinion about whether defendant could have performed the field sobriety tests when he was arrested in in 2013. "There [was] nothing in the report that indicate[d] that the defendant [was] unable to perform these tests a year earlier." Further, Dr. Greenberg's testimony would have been limited to the "four corners of the report," meaning that he could not have offered an opinion at trial about defendant's abilities as of 2013.

The Law Division found defendant guilty of DWI in the Montvale case based on the Alcotest result of .15 percent BAC and on observation evidence by the police. The judge deferred to the credibility findings of the municipal court judge. He also found the officers' testimony, observations, and opinions to be credible. The court found probable cause for the motor vehicle

stop. The court rejected defendant's argument that the Alcotest was improperly administered. Although the testimony about changing the mouthpieces between the second and third tests was "sketchy," the court was satisfied from the transcripts that the officer changed the mouthpieces.

The trial court found defendant guilty of DWI in the Park Ridge case based solely on the observation evidence. Reviewing the transcript de novo, the court found there was probable cause for the motor vehicle stop of defendant based on "violation of the motor vehicle laws." The court found the officer's testimony to be credible. Szot had to travel in excess of the posted speed limit to catch up with defendant; he observed defendant's failure to stop; and defendant did not stop despite the officer's siren and lights.

The judge also denied defendant's motion to suppress the police video tape. The court reviewed Szot's testimony about defendant's odor of alcohol, his appearance, slow movements, flushed face and cognitive testing, finding that the officer "had a right to ask [defendant] to step out of the vehicle."

The trial court convicted defendant based on observation evidence that was "beyond a reasonable doubt." The officer's testimony was corroborated by the video tape. The field sobriety

tests were properly given. Defendant did not testify at trial. The court found defendant's failure to perform the sobriety tests resulted from being under the influence of alcohol and not from any medical or physical disability. Defendant also failed cognitive tests, noting there would be no physical reason for this.

## II.

On appeal, defendant raises the following issues:

POINT I

APPELLANT WAS PRECLUDED FROM INTRODUCING EXPERT TESTIMONY IN VIOLATION OF HIS DUE PROCESS RIGHTS.

A.   The Lower Courts Misinterpreted and Overextended Judge Norton's Recusal Order.

B.   Dr. Greenberg's Testimony is Relevant.

C.   At a Minimum, Dr. Greenberg's Testimony was Subject to a Rule 104 Hearing.

D.   Dr. Greenberg's Preclusion was Related in Part to Ineffective Assistance of Counsel (Not Raised Below).

POINT II

THE OCTOBER 23, 2014 TRIAL COURT IMPROPERLY ADMITTED EVIDENCE PERTAINING TO THE ALCOTEST AS THE STATE FAILED TO PROVE THAT PROPER PROCEDURES WERE FOLLOWED.

POINT III

APPELLANT WAS IMPROPERLY STOPPED ON SEPTEMBER 13, 2013 AND COUNSEL SHOULD HAVE MADE AN APPROPRIATE MOTION TO DISMISS (Raised in Part Below).

On appeal, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001) (citing State v. Joas, 34 N.J. 179, 184 (1961)). Under Rule 3:23-8(a)(2), the Law Division makes independent findings of fact and conclusions of law de novo, based on the record from the municipal court. See State v. States, 44 N.J. 285, 293 (1965). We determine "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review of legal determinations is plenary. See State v. Handy, 206 N.J. 39, 45 (2011).

We are satisfied that the State produced sufficient observation evidence in both cases to convict defendant of driving while under the influence beyond a reasonable doubt.

The thrust of the Motor Vehicle Act is safety on the highway.

> N.J.S.A. 39:4-50(a) prohibits the operation of a motor vehicle under the influence of intoxicating liquor. The phrase "under the influence" means a substantial deterioration

or diminution of the mental faculties or physical capabilities of a person. State v. Tamburro, 68 N.J. 414, 420 (1975). In a case involving intoxicating liquor, "under the influence" means a condition which so affects the judgment or control of a motor vehicle operator "as to make it improper for him to drive on the highway." State v. Johnson, 42 N.J. 146, 165 (1964).

[State v. Cryan, 363 N.J. Super. 442, 455 (App. Div. 2003).]

An officer's subjective observation of a defendant is a sufficient ground to sustain a DWI conviction. See Cryan, 363 N.J. Super. at 456-57 (sustaining DWI conviction based on observations of defendant's bloodshot eyes, hostility, and strong odor of alcohol); see also State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002) (sustaining DWI conviction based on officer's observation of the defendant's driving without headlights, inability to perform field sobriety tests, combativeness, swaying, and detection of odor of alcohol on the defendant's breath); Oliveri, 336 N.J. Super. at 251-52 (sustaining DWI conviction based on officer's observations of watery eyes, slurred and slow speech, staggering, inability to perform field sobriety tests, and defendant's admission to drinking alcohol earlier in the day).

In the Montvale case, the police officers testified about defendant's odor of alcohol, watery and blood shot eyes, and slow

16

speech that was slurred. He was wobbly and unsteady. He failed the field sobriety tests in a number of ways, including not taking the proper number of steps and not counting out loud as instructed. He had driven over the center line and turned widely.

In the Park Ridge case, the officers testified about defendant's odor of alcohol, particularly when he was at the station, that his speech was slow and slurred, eyes bloodshot and watery, and his face was flush. He fumbled for his documents. He staggered and took the wrong number of steps in the field sobriety tests that he failed. He could not recite the alphabet or count backwards properly. He had accelerated rapidly and turned wide. He had not stopped for the police officer's siren and lights.

A defendant's demeanor, physical appearance, slurred speech, and bloodshot eyes, together with an odor of alcohol, are sufficient to sustain a DWI conviction. State v. Bealor, 187 N.J. 574, 588-89 (2006); State v. Morris, 262 N.J. Super. 413, 421-22 (App. Div. 1993). The Law Division judge did not err in finding that the observation evidence satisfied these standards beyond a reasonable doubt and in convicting defendant of driving while intoxicated, N.J.S.A. 39:4-50.

We reject defendant's argument that there was no probable cause for the motor vehicle stop in Park Ridge on September 13,

2013. "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Moore, 181 N.J. 40, 46 (2004) (alterations in original) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)). A police officer has justification to stop a motor vehicle where he has an "articulable and reasonable suspicion" that the driver has committed a motor vehicle offense. State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997).

Here, the municipal court and Law Division judges found Szot's testimony to be credible. We defer to that finding. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Locurto, 157 N.J at 474. Szot testified he saw defendant accelerate quickly, proceed through a red light, turn right, turn widely and fail to stop for the officer once his siren and lights were activated. Under the totality of the circumstances, these facts were enough for an objectively

reasonable police officer to believe that defendant had committed a motor vehicle in violation.

Any error with respect to not permitting Dr. Greenberg to testify was harmless in light of our decision here that the convictions are affirmed based on observation evidence. See State v. Castagna, 187 N.J. 293, 312 (2006) (quoting State v. Macon, 57 N.J. 325, 337-38 (1971)) (providing based on Rule 2:10-2 that "[w]e will disregard '[a]ny error or omission [by the court] . . . unless it is of such a nature as to have been clearly capable of producing an unjust result.'"). There was overwhelming observation evidence of defendant's guilt in both cases based on his driving, appearance, smell, behavior and cognitive inabilities. Defendant admitted he had been drinking in the Montvale case. Dr. Greenberg's testimony about defendant's physical condition would not have explained away any of the other evidence of intoxication.

If there were errors by trial counsel, "[o]ur courts have expressed a general policy against entertaining ineffective-assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006), (quoting State v. Preciose, 129 N.J. 451, 460 (1992).

Finally, we reject defendant's argument that the Alcotest procedures were flawed in the Montvale case. Defendant contends that there was no direct testimony that the officer removed cell phones and other devices before starting the test. The State bears the burden of proving compliance by clear and convincing evidence. State v. Campbell, 436 N.J. Super. 264, 270 (App. Div. 2014). However, the Court provided in Chun that "there is ample support for the finding that the Alcotest is well-shielded from the impact of any potential RFI that might otherwise affect the reported results or limit our confidence in the accuracy of the test results." State v. Chun, 194 N.J. 54, 89 (2008). We said in Carrero that "even if sources of RFI happened to be found in the testing area at the [police station] where [defendant's] blood-alcohol level was tested, those sources would not suffice to call into reasonable question the accuracy or validity of the Alcotest results for the purpose of a DWI prosecution." State v. Carrero, 428 N.J. Super. 495, 510 (App. Div. 2012), rev'd on other grounds, 225 N.J. 582 (2016).

Defendant also contends there was no affirmative testimony by the officer that he put a new mouthpiece on the machine after the second test and before the third in the Montvale case. However, we agree that the record supported the trial court's

finding that proper procedures were followed in the testing. The officer described the process. "You hit continue, and the defendant blows again. And the same process. Um, again, with a new mouthpiece, not the old one . . . ." He described the procedures in detail. The officer responded to the question "and that's what you remember doing" after he described this and other procedures, with the answer "I do remember doing that, yes." Based on the record, we have no basis to attack the findings of the Law Division judge that the Alcotest was properly performed. Thus, there also was independent credible evidence to convict defendant of DWI on a per se basis in the Montvale case. See N.J.S.A. 39:4-50.

Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION